

# METROPOLITAN  LEARNING  INSTITUTE
**Licensed by the New York State Education Department**
**Non–Profit Educational Organization**
**Accredited by Council on Occupational Education (COE)**
*"Innovative Approach Is Our Way to Success"*
www.gettraining.org

| Main Campus: | Extension: |
|---|---|
| 97-77 Queens Blvd., 9th Floor | 550 59th Street |
| Rego Park, NY 11374 | Brooklyn, NY 11220 |
| Phone (718) 897-0482 | Phone (718) 492-2120 |
| Fax    (718) 897-5667 | Fax    (718) 492-2197 |

**January 7, 2021**

**Hon. Mag. Judge Mann**
**United States District Court**                           Writer's Direct Line
**225 Cadman Plaza East**                                   201-953-4450
**Brooklyn, NY**
**11201**

Re: *Sandra Heras v. Metropolitan Learning Institute, Inc. and Boris Davidoff*;
No. 19-2694

**Dear Judge Mann:**

We represent Defendants Metropolitan Learning Institute, Inc. and Boris Davidoff (collectively "MLI") in the above captioned action.

Defendants respectfully submit this letter motion in support of a motion for decertification of the collective action pursuant to the Fair Labor Standards Act ("FLSA") § 216(b).

## INTRODUCTION

As discussed in further detail below, the record demonstrates that this matter is not appropriate for collective resolution.

To date, upon information and belief, not one additional opt-in Plaintiff has since joined the lawsuit despite that Plaintiff has mailed over 20 notices to join the action (based on the fact that Plaintiff has not filed a single notice of the same, which was required to be filed on a rolling basis – See Order dkt. 68 "Plaintiff's counsel is directed to docket into the court file, on a rolling basis, on or before January 10, 2022, all Consent to Join Collective Action forms submitted by members of the collective"). For the Court's information, Defendants consent to hold this motion in abeyance until January 10, 2022 to ensure there are no last-minute joiners if this is so required by the Court.

The fact that there are zero (or an extremely low number if anyone joins before January 10, 2022) of opt-ins relative to the number of potential class members weighs against certification. While Section 216(b) does not have a numerosity requirement, the apparent lack of enthusiasm by the class indicates that a collective action is inappropriate. See *Keef v. M.A. Mortenson Co.*, No. 07 cv 3915 (JMR), 2009 WL 465030, at *3 (D. Minn. Feb. 24, 2009) See *Griffith et al v. Fordham Financial Management, Inc. et al,* No. 1:2012-cv-01117- (S.D.N.Y. 2013)

Moreover, even assuming there *had* been any opt-ins, Plaintiff's claims are not based on a common policy or practice promulgated by MLI as explained herein. Thus, because there is no single practice at issue, individual issues on liability, damages and defenses predominate over any common questions. In addition, fairness and procedural concerns weigh in favor of decertification because the class is not sufficiently numerous. For these reasons, MLI respectfully requests that this Court decertify the FLSA collective action.

## STATEMENT OF RELEVANT FACTS

Plaintiff Sandra Heras (collectively, "Named Plaintiffs"), commenced this action on behalf of herself and others similarly situated, alleging that Defendants failed to pay earned overtime wages, failed to furnish employees with required pay rate notices and wage statements, in violation of the Fair Labor Standards Act ("FLSA") 29 U.S.C. § 207 and New York Labor Law ("NYLL") §§ 195 and 198. See Amended Complaint at dkt. 3.

Plaintiff specifically brought the action for alleged unpaid wages and overtime pay on behalf of the FLSA Collective. Defendants deny the material allegations contained in Plaintiffs' Class and Collective Action Complaint. See Answer to Amended Complaint at dkt. 24.

Plaintiff moved for conditional certification of the collective action consisting of all current and former MLI recruiters. By Order dated September 28, 2021, this Court granted Named Plaintiff's motion in part as to the Metropolitan Learning Institute school recruiters employed at Rego Park on or after August 16, 2018 (See dkt. 57). The Court's September 28, 2021 Order reiterated that the first step in the conditional certification of a class is a lenient standard, and that the Court may reverse its preliminary certification after discovery is largely completed and potential plaintiffs have opted in.

Plaintiff Sandra Harris claimed that she, and others similarly situated, worked over 40 hours per week, but were only paid for 40 hours per week; that Plaintiff usually worked from 9am to 6pm without a meal break (See Plaintiff's Complaint ¶ 38); In addition, that approximately four times a month, Plaintiff would have to work past 6pm—until approximately 9pm (See Plaintiff's Complaint ¶ 38); that performed work during lunch breaks for which she was not paid; and that Plaintiff was not furnished with required wage statements and wage notices. Plaintiffs' claims related to wage statements, and wage notices are New York Labor Law claims, and thus not properly adjudicated as a collective action under the FLSA § 216(b).

Since conditional certification was granted, the parties completed depositions of the Plaintiff, the individual Defendant, and the s. 30(b)(6) witness. As discussed herein, the depositions and other

discovery in this case has revealed disparate situational circumstances amongst the potential "class" members, which overwhelmingly supports decertification of the collective action.

At all relevant times herein, Heras used a time-keeping machine to record employee punch-in and punch-out times (Exhibit A; Heras depo pp. 20-21, 24-25, 1-2). Also at all relevant times herein, MLI used Oasis Advantage Payroll Services (Exhibit B; Davidoff depo pp. 33, 15-19).

The pay period semi-monthly, and paychecks are distributed or directly deposited twice per month, regardless if the month is 28 days or 31 days. Defendants rely on its third party vendor, Oasis Advantage, to ensure compliance with applicable wage and hour laws. MLI recruiters begin work each morning at 9:00 a.m. (See Plaintiff's Complaint ¶38). Upon arrival, they are required to punch in using the time clock located near the entrance. They are then assigned to a job site, and proceed to travel to the job site for the day.

## ARGUMENT

### I. LEGAL STANDARD

Section 2 1 6(b) of the FLSA allows an employee to assert claims on behalf of herself and "other employees similarly situated" through a collective action suit. 29 U.S.C. § 216. The Second Circuit has endorsed a two-step method to determine whether to certify an FLSA collective action. *Myers v. Hertz Corp.*, 624 F.3d 537, 554-55 (2d Cir.2010). In the first step, the court determines whether to permit the plaintiff to send notice to other potential plaintiffs of the opportunity to opt in to the suit, based on whether there exist potential plaintiffs who are "similarly situated" to the plaintiff with respect to the alleged FLSA violation. See id. at 555.

After conditionally certifying a collective in the first step, the defendant has the opportunity to move for decertification if, after additional discovery, the record shows that the opt-in plaintiffs in fact are not similarly situated to the named plaintiffs. *Myers*, 624 F.3d at 555. The Court must apply a more "stringent standard" of proof in this second stage for determining whether plaintiffs are similarly situated for the purposes of the FLSA. See *Damassia v. Duane Reade, Inc.*, No. 04-cv-8819, 2006 WL 2853971, at *3 (S.D.N.Y. Oct. 5, 2006). In determining whether to decertify, courts look to the following factors: (1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against [collective action treatment]."' *Indergit v. Rite Aid Corp.*, 293 F.R.D. 632, 639 (S.D.N.Y. 2013); *Zivali v. AT&T Mobility, LLC*, 784 F.Supp.2d 456,460 (S.D.N.Y. 2011); *Perez v. Allstate Ins. Co.*, No. 11 Civ. 1812 (FJB), 2014 WL4635745, *6 (E.D.N.Y. Sept. 16, 2014).

It is the named plaintiff who bears the burden of proving that the "other employees are similarly situated." *Indergit,* 293 F.R.D. at 639 (citing *Ayers v. SGS Control Servs.,* No. 03 Civ. 9078 (RMB), 2007 WL 646326, at *4 (S.D.N.Y. Feb. 27, 2007)); Perez, 2014 WL 4635749 at *6. Where discovery has shown that plaintiffs are similarly situated, the collective action will properly advance to trial; "but if they are not, 'the class is decertified, the claims of the opt-in plaintiffs are dismissed without prejudice, and the class representative may proceed on his or her own claims."' *Indergit*, 293 F.R.D. at 639.

## II. PLAINTIFFS' COLLECTIVE ACTION CLAIMS FOR ALLEGED UNPAID WAGES AND OVERTIME SHOULD BE DECERTIFIED

Plaintiff alleges, on behalf of herself and the FLSA Collective, that Defendants failed to compensate Named Plaintiffs and the FLSA Collective for time worked in excess of 40 hours per week in violation of 29 U.S.C. §207(a)(l). As described below, the deposition testimony from the Plaintiff and the Defendants belie these claims.

### A. Defendants Did Not Have a Common Policy of Curtailing Recruiters Lunch Hour or other Scheme to deny Compensation for all hours worked

Plaintiff's claims for unpaid wages and overtime pay stem primarily from allegations that Defendants failed to pay wages for time spent working during meal periods and failed to pay wages for time spent working before clocking in, and after clocking out. The core issues to be determined here include whether Defendants had actual or constructive knowledge that plaintiffs were working outside of their regular hours without compensation, and whether the practices of Defendants supervisors were generally uniform. See *Kuebel v. Black & Decker, Inc*., 643 F.3d 352, 361 (2d Cir.2011) ("To establish liability under the FLSA on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work."); see also *Thind v. Healthfirst Mgmt. Servs., LLC*, No. 14-cv-9539, 2016 WL 7187627, at *3 (S.D.N.Y. Dec. 9, 2016); *Zivali,* 784 F. Supp. 2d at 467-68.

Here, the record demonstrates that Defendants had no knowledge of the alleged "off-the-clock" work allegedly being performed by Plaintiff, such as arrival before 9:00 am, and that Plaintiffs were subject to varying work schedules (See Exhibit C, depo of MLI Recruiter Henry Torres pp. 16; from the matter of *Steven Nunez v. Metropolitan Learning Institute et al.* No. 18-cv-1757):

> A.  It depends on the recruiter. In the
> 19   way I work is 50 percent I go outside and 50
> 20   percent I try to do appointment with the students
> 21   and documentation.

See also Exhibit D, depo of MLI Recruiter Taslima Khan pp. 38; from the matter of *Steven Nunez v. Metropolitan Learning Institute et al.* No. 18-cv-1757:

> 14   A. 9. Sometimes somebody has different
> 15    schedule. Like somebody come like 9. 9 to 6.
> 16   Somebody come like 10 to 7.

and therefore were not victims of any common plan or scheme to deny compensation for all hours worked.

4

Plaintiff Heras's testimony supports Defendants' contention that her start time was at 9:00 am when she was required to punch-in. Heras worked five days per week, with uniform shift times of 9:00 am to 6:00 pm, with a one-hour lunch break. The record indicates that Heras alleged she punched in prior to 9:00 am from time-to-time; however, it was disclosed during deposition that it was against company policy to permit staff to arrive and punch-in prior to 9:00am (See Exhibit E depo of MLI Main Campus Director James Bruce pp. 129; 10-12). Accordingly, Heras had contravened company policy by arriving and punching-in before 9:00 am.

As described above, Defendants have consistently enforced a policy of recording employees' time in and time out using a punch-in, punch-out system, and entering the data into the Oasis Advantage payroll system for the generation of employee paychecks or pay-records from direct deposit. Plaintiff testified that she had to work into the evening from time-to-time in order to give a tour of MLI to the prospective student – and often the student could schedule the tour of MLI after work hours. However, even if Plaintiff could demonstrate that she sporadically worked over 40.0 hours, either by punching-in before 9:00 am or working past 6:00 pm, these claims are highly individualized and, even assuming liability could be established on a collective basis, would require separate trials on damages.

### B. Defendants Did Not Have a Common Policy of Requiring Recruiters to Work Through Meal Periods without Pay

Additionally, Named Plaintiffs have completely failed to demonstrate that Defendants had a policy of requiring recruiters to perform work during meal periods. To the contrary, Defendants' long standing policy, as detailed in the Employee Handbook, contradicts this assertion. See Exhibit F.

Here, the evidence demonstrates that Defendants' policy is to afford employees a one hour lunch break. Moreover, Plaintiff alleged the curtailing of the lunch breaks was the result of one recruiter-supervisor (Exhibit G depo of Plaintiff, pp. 32; 6-23),

```
 6    Q. When you were in the field
 7    whenever you were in a mall or on the
 8    sidewalk, were you supervised as a
 9    recruiter?
10    A. My supervisor is a recruiter?
11    Q. Would you say that you were
12    supervised when you were in the field when
13    you were trying to solicit students, would
14    you say that you were supervised, you were
15    under supervision, was there someone there
16    that monitored you?
17    A. Yes, yes.
18    Q. Who was that person?
19    A. Her name, her name is Mary Ann?
20    Q. Mary Ann?
21    A. Yes.
```

```
22      Q. Do you know her last name?
23      A. No, I don't know the last name.
```

Plaintiff has failed to show that Defendants implemented a "common plan or scheme" in failing to pay wages and overtime for all hours worked. See, *Ruiz v. Citibank, NA*., 93 F.Supp.3d 279, 299 (S.D.N.Y. 2015); see also, *Zivali*, 784 F.Supp.2d at 463; *Perez*, 2014 WL 4635749 at *6 (citing Myers, 624 F.3d at 555).

### C.  MLI Recruiters had other disparate situational circumstances

In addition to disparate situational circumstances in i) supervisors and ii) start times as described in the foregoing, the MLI recruiters also were disclosed to have disparate situational circumstances in pay rate and pay category (salary versus hourly - See Exhibit H, depo of MLI Recruiter Henry Torres pp. 29; 3-4, from the matter of *Steven Nunez v. Metropolitan Learning Institute et al. No. 18-cv-1757* "*My salary is 45,000 a year*" See also Exhibit I, depo of MLI Recruiter Taslima Khan pp. 32; 16-17 from the matter of *Steven Nunez v. Metropolitan Learning Institute et al.* No. 18-cv-1757: "*My salary is like I told you $45,000"*. As well, the MLI recruiters also were disclosed to have disparate situational circumstances in degree to which employees could work unsupervised, as well as degree of supervision of other; for example, See Exhibit J, depo of MLI Recruiter Henry Torres pp. 65-66; 22-25; 2, from the matter of *Steven Nunez v. Metropolitan Learning Institute et al. No. 18-cv-1757*:

```
21      Director or coworkers train the new recruiters.
22      Director or sometimes when he isn't available the
23       managers train the recruiters or myself or
24      coworker.
25      Q. It sort of varies?
2       A. Yes.
```

The differing factual circumstances as described herein, particularly with regard to differences in supervisory authority, provide justification for decertification. See *Lynch v. City of New York*, 16-CV-5677 (KBF), 2017 WL 4877425 (S.D.N.Y. Oct. 27, 2017) (decertifying a class where off-the-clock work and overtime approval varied by supervisor); *Thind v. Healthfirst Mgmt. Servs., LLC*, No. 14-cv-9539, 2016 WL 7187627, at *3 (S.D.N.Y. Dec. 9, 2016) (decertifying a class of plaintiffs where some were expressly authorized to work off the clock while others were never directed to do so); see also *Zivali*, 784 F. Supp. 2d at 467-468 (decertifying in part because the "knowledge of each individual manager varies widely," thus making the defenses highly individualized).

The myriad of accounts from potential Plaintiffs weighs against certification of the collective action, as it would be difficult for Defendants to rely on "representative proof' in asserting its defenses. See *Stevens v. HMSHost Corp*., No. 10-CV-3571 (ILG) (VVP), 2014 WL 4261410 at *7 (E.D.N.Y. Aug. 27, 2014). "To find otherwise would reduce Section 2l6(b)'s requirement that plaintiffs be 'similarly situated' to a mere requirement that plaintiffs share an employer, a job title, and a professed entitlement to additional wages." *Scott v. Chipotle Mexican Grill, Inc*., No.

12-CV-8333 (ALC)(SN), 2017 WL 1287512, at *9 (S.D.N.Y. Mar. 29, 2017) (quoting Ruiz, 93 F.Supp.3d at 300).

## CONCLUSION

For the foregoing reasons, Named Plaintiffs have failed to meet their burden of showing that the other Plaintiffs are employed under terms and conditions similar to their own, let alone terms and conditions that violate the FLSA. See *Sanchez v. JMP Ventures, L.L.C.*, No. 13 Civ. 7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014); As such, Defendants' respectfully request that the Court enter an Order decertifying the conditionally certified collective action, and granting such other and further relief as the Court may deem just and proper.

**Respectfully submitted,**

*/s/ Christopher Rykaczewski*

Christopher Rykaczewski, Esq.
*Attorney for Defendants*